**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| ALEXANDRA MONIOUDIS, | : | **Hon. Dennis M. Cavanaugh** |
| Petitioner, | : | |
| v. | : | Civil No. 06-5964 (DMC) |
| MICHAEL CHERTOFF, et al., | : | **OPINION** |
| Respondents. | : | |

**APPEARANCES**:

> ALEXANDRA MONIOUDIS, #A30-766-137
> Monmouth County Correctional Facility
> Department of Homeland Security
> P.O. Box 5007
> Freehold, New Jersey 07728
> Petitioner Pro Se

**CAVANAUGH, District Judge**

In November 2005, Alexandra Monioudis, an immigration detainee who is confined at the Monmouth County Correctional Facility, filed a Petition for Habeas Corpus and Review of Final Order of Removal and a motion for stay of removal in the United States Court of Appeals for the Second Circuit. On December 6, 2006, the Second Circuit dismissed the challenge to removal because it lacks an arguable basis in law or fact, and transferred Petitioner's challenge to her detention to this Court. Having thoroughly examined the Petition and supporting documents and for the reasons set forth below, this Court will grant in forma pauperis status and dismiss the Petition without prejudice. The dismissal is without prejudice to the filing of another petition in the event that Petitioner's removal to Greece is not reasonably foreseeable.

## I. BACKGROUND

Alexandra Monioudis, a native and citizen of Greece, challenges her detention at a New Jersey jail by the Department of Homeland Security ("DHS") as unconstitutional, see Zadvydas v. Davis, 533 U.S. 678 (2001), and not authorized by statute. Petitioner was admitted to the United States as a lawful permanent resident in 1973. Since that time, Petitioner was convicted of three crimes relating to controlled substances. Specifically, on October 10, 1996, Petitioner was convicted of attempted criminal sale of a controlled substance (cocaine), and on February 24, 2004, and February 5, 2005, she was convicted of criminal possession of a controlled substance (crack/cocaine).

On July 6, 2005, the Department of Homeland Security ("DHS") issued a warrant for Petitioner's arrest and a notice to appear, charging that Petitioner was subject to removal from the United States pursuant to 8 U.S.C. § 1227(a)(2)(B)(i) because she was convicted of a violation of a law relating to a controlled substance, other than an single offense involving possession for one's own use of 30 grams or less of marijuana, and pursuant to 8 U.S.C. § 1227(a)(2)(A)(iii) because she was convicted of an aggravated felony. DHS took Petitioner into custody on July 6, 2005, and she has been detained since that date. On October 27, 2005, Immigration Judge Alan Vomacka, New York, New York, ordered Petitioner removed to Greece, denied her request for an individualized bond hearing, and ruled that no relief was available as a matter of law. The order of removal indicates that Petitioner waived the right to appeal to the Board of Appeals. On November 7, 2005, the Immigration Judge denied Petitioner's application for a stay of removal.

2

On November 30, 2005, the United States Court of Appeals for the Second Circuit docketed a pro se Petition for Habeas Corpus and Review of Agency Order, signed by Petitioner on November 23, 2005, together with her motions for a stay of removal and to proceed in forma pauperis. On December 6, 2006, the Second Circuit dismissed the challenge to the removal and transferred the detention challenge to this Court. Specifically, the Second Circuit issued the following Order:

> Petitioner, pro se, moves for in forma pauperis ("IFP") status and a stay of removal. To the extent the Petitioner challenges the legality and constitutionality of her detention, upon due consideration, it is hereby ORDERED that the petition for review is TRANSFERRED to the United States District Court for the District of New Jersey, where jurisdiction is proper. See Rumsfeld v. Padilla, 542 U.S. 426, 443 (2004). To the extent that the Petitioner challenges her order of removal, it is hereby ORDERED that the motion for IFP status is DENIED and the petition for review is DISMISSED because it lacks an arguable basis in law or fact. See 28 U.S.C. § 1915(e)(2)(B)(i); Neitzke v. Williams, 490 U.S. 319, 327 (1989); Pillay v. I.N.S., 45 F.3d 14, 17 (2nd Cir. 2002). It is further ORDERED that the motion for stay of removal is DENIED as moot.

Monioudis v. Gonzales, Docket No. 05-6365-ag order (2nd Cir. Dec. 6, 2006).

The Clerk of this Court entered receipt of the certified copy of transfer order and docket from the Second Circuit on December 14, 2006. Although the first page of the Petition indicates that Petitioner seeks a remedy for unlawful detention, the Petition focuses primarily on Petitioner's challenge to the order of removal and her request for a stay of removal. Distinguishing Demore v. Kim, 538 U.S. 510 (2003), Petitioner argues that the Immigration Judge's failure to provide an individualized bond hearing to determine if she posed a flight risk or danger to the community violated 8 U.S.C. § 1226(c), as interpreted by Patel v. Zemski, 275

3

F.3d 299 (3d Cir. 2001), and her Fifth Amendment right to due process of law under Zadvydas v. Davis, 533 U.S. 678 (2001). (Pet. ¶¶12-15, pp. 20-23, 27-29.) Specifically, she asserts in relevant part:

> The Petitioner further submits that her continued detention by the Respondents violates INA § 236(c), 8 U.S.C. § 1226(c), as interpreted in Patel. It is extremely unlikely that the Respondents will remove the Petitioner. The Supreme Court held in Zadvydas that the continued detention of someone like the Petitioner under such circumstances is unreasonable, and is not authorized by statute . . . . The Petitioner further submits that her continued detention violates her right to substantive due process by depriving her of her core liberty interest to be free form bodily restraint. See Zadvydas, 121 S. Ct. at 2498-99. The Due Process Clause requires that the deprivation of the Petitioner's liberty be narrowly tailored to serve a compelling government interest. While the Respondents would have a compelling government interest in detaining the Petitioner in order to effect her deportation, that interest does not exist if she is unlikely to be deported. Zadvydas thus holds that continued detention is permissible only for a period reasonably necessary to secure the alien's removal because any other reading would go beyond the government's articulated interest, to effect the alien's removal. See Zadvydas, 121 S. Ct. at 2499. Moreover, as interpreted by the Third Circuit in Patel, mandatory detention of aliens in accordance with INA § 235(c) after they have been found subject to removal but who have not yet been ordered removed because they are pursuing their administrative remedies violates their due process rights unless they have been afforded the opportunity for an individualized hearing at which they can show that they do not pose a flight risk or danger to the community. See Patel, 275 F.3d at 314 . . . . The Petitioner further submits that under the Due Process Clause of the United States Constitution, an alien is entitled to a timely and meaningful opportunity to demonstrate that she should not be detained.

(Pet. at pp. 27-28.)

In addition, relying on 8 C.F.R. § 3.19(h)(2)(i)(D), Petitioner contends that she was entitled to seek a determination by the Immigration Judge that she was not properly classified as

4

an alien subject to mandatory detention in removal proceedings. (Id.) As relief for her allegedly unlawful detention, Petitioner seeks an order directing Respondents to immediately release her or remanding the matter to the Immigration Court for an individualized hearing to determine whether the Petitioner is a risk of flight or danger to the community. (Id. at p. 29.)

## II. DISCUSSION

A. Legal Standard

"Habeas corpus petitions must meet heightened pleading requirements." McFarland v. Scott, 512 U.S. 849, 856 (1994). "Federal courts are authorized to dismiss summarily any habeas petition that appears legally insufficient on its face." McFarland, 512 U.S. at 856; see also Mayle v. Felix, 125 S. Ct. 2562, 2570 (2005). Dismissal without the filing of an answer is warranted "if it appears on the face of the petition that petitioner is not entitled to relief." Siers v. Ryan, 773 F.2d 37, 45 (3d Cir. 1985), cert. denied, 490 U.S. 1025 (1989); see also McFarland, 512 U.S. at 856; United States v. Thomas, 221 F.3d 430, 437 (3d Cir. 2000) (habeas petition may be dismissed where "none of the grounds alleged in the petition would entitle [the petitioner] to relief").

Under 28 U.S.C. § 2241(c), habeas jurisdiction "shall not extend to a prisoner unless . . . [h]e is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). A federal court has subject matter jurisdiction under § 2241(c)(3) if two requirements are satisfied: (1) the petitioner is "in custody," and (2) the custody is "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3); Maleng v. Cook, 490 U.S. 488, 490 (1989); 1 James S. Liebman & Randy Hertz, Federal Habeas Corpus Practice and Procedure § 8.1 (4th ed. 2001). This Court has subject matter jurisdiction over the

Petition under § 2241 because Petitioner was detained within its jurisdiction in the custody of the DHS at the time she filed her Petition, see Spencer v. Kemna, 523 U.S. 1, 7 (1998), and she asserts that her detention is not statutorily authorized and violates her constitutional rights, see Zadvydas, 533 U.S. at 699. See Bonhometre v. Gonzales, 414 F.3d 442, 445-46 (3d Cir.2005) (recognizing that the Real ID Act did not eliminate district court habeas jurisdiction over alien's challenge to detention).

B. Legality of Detention

Petitioner challenges her mandatory pre-removal period detention pursuant to 8 U.S.C. § 1226(c) and the Immigration Judge's failure to conduct an individualized bond hearing. The Immigration and Nationality Act ("INA") authorizes the Attorney General of the United States to issue a warrant for the arrest and detention of an alien pending a decision on whether the alien is to be removed from the United States. See 8 U.S.C. § 1226(a). Section 1226(a) provides: "On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States . . ." 8 U.S.C. § 1226(a). Section 1226(c) mandates detention during removal proceedings for a limited class of criminal aliens. See 8 U.S.C. § 1226(c).[1] In Demore v. Kim, 538 U.S. 510 (2003), the Supreme Court upheld the

---

[1] Section 1226(c) provides:

(c) Detention of criminal aliens

(1) Custody

The Attorney General shall take into custody any alien who--

(A) is inadmissible by reason of having committed any offense covered in section 1182(a)(2) of this title,

(continued...)

6

constitutionality of § 1226(c), and ruled that mandatory detention of criminal aliens during removal proceedings is a constitutionally permissible part of the removal process. "[T]he statutory provision at issue governs detention of deportable criminal aliens *pending their removal proceedings*. Such detention necessarily serves the purpose of preventing deportable criminal

---

[1](...continued)
    (B) is deportable by reason of having committed any offense covered in section 1227(a)(2)(A)(ii), (A)(iii), (B), (C), or (d) of this title,

    (C) is deportable under section 1227(a)(2)(A)(i) of this title on the basis of an offense for which the alien has been sentence[d] to a term of imprisonment of at least 1 year, or

    (D) is inadmissible under section 1182(a)(3)(B) of this title or deportable under section 1227(a)(4)(B) of this title,

when the alien is released, without regard to whether the alien is released on parole, supervised release, or probation, and without regard to whether the alien may be arrested or imprisoned again for the same offense.

(2) Release

The Attorney General may release an alien described in paragraph (1) only if the Attorney General decides pursuant to section 3521 of Title 18 that release of the alien from custody is necessary to provide protection to a witness, a potential witness, a person cooperating with an investigation into major criminal activity, or an immediate family member or close associate of a witness, potential witness, or person cooperating with such an investigation, and the alien satisfies the Attorney General that the alien will not pose a danger to the safety of other persons or of property and is likely to appear for any scheduled proceeding. A decision relating to such release shall take place in accordance with a procedure that considers the severity of the offense committed by the alien.

8 U.S.C. § 1226(c).

aliens from fleeing prior to or during their removal proceedings, thus increasing the chance that, if ordered removed, the aliens will be successfully removed." Id. at 527-28.

Once an alien is ordered removed, the Attorney General is required to remove him from the United States within a 90-day "removal period." See 8 U.S.C. § 1231(a)(1)(A) ("Except as otherwise provided in this section, when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days (in this section referred to as the 'removal period').") 8 U.S.C. § 1231(a)(1)(A). Section 1231(a)(2) requires the Attorney General to detain an alien during the 90-day removal period: "During the removal period, the Attorney General shall detain the alien. Under no circumstance during the removal period shall the Attorney General release an alien who has been found inadmissible under section 1182(a)(2) or 1182(a)(3)(B) of this title or deportable under section 1227(a)(2) or 1227(a)(4)(B) of this title." 8 U.S.C. § 1231(a)(2); Zadvydas, 533 U.S. at 683.

If the DHS does not remove the alien within the 90-day removal period, then § 1231(a)(6) authorizes the Attorney General to either release or continue to detain the alien. Specifically, § 1231(a)(6) provides:

> An alien ordered removed who is inadmissible under section 1182 of this title, removable under section 1227(a)(1)(C), 1227(a)(2), or 1227(a)(4) of this title or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period and, if released, shall be subject to the terms of supervision in paragraph (3).

8 U.S.C. § 1231(a)(6).

In Zadvydas, the Supreme Court held that § 1231(a)(6) does not authorize the Attorney General to detain aliens indefinitely beyond the removal period, but "limits an alien's post-

8

removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States." Zadvydas, 533 U.S. at 689. However, "once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." Id. at 699. To guide habeas courts, the Court recognized six months as a "presumptively reasonable period" of post-removal-period detention. Id. at 701. "After this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing. And for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink." Id.

In 2005, the Supreme Court ruled in Clark v. Martinez, 543 U.S. 371 (2005), that the post-removal period detention of two inadmissible aliens from Cuba who had not effected "entry" was no longer statutorily authorized by § 1231(a)(6) because removal to Cuba was not reasonably foreseeable. See id. at 384. The aliens "were detained well beyond six months after their removal orders became final," and the government "brought forward nothing to indicate that a substantial likelihood of removal subsists despite the passage of six months (indeed, it concedes that it is no longer even involved in repatriation negotiations with Cuba)." Id. at 386. Under those circumstances, the Court held that the petitions for habeas corpus should have been granted. Id.

In this case Petitioner asserts that her mandatory pre-removal period detention under § 1226(c) is unconstitutional because she was not given an individualized bond hearing. However, this challenge (to the extent that it remains viable after Demore v. Kim) is misplaced because Petitioner's detention is not governed by § 1226(c). Petitioner's removal period began on

9

October 27, 2005, when the Immigration Judge ordered her removed and Petitioner waived her right to appeal. The 90-day removal period begins when the latest of several events occurs. See 8 U.S.C. § 1231(a)(1)(B). Section 1231(a)(1)(B) provides in full:

> The removal period begins on the latest of the following:
>
> (i) The date the order of removal becomes administratively final.
>
> (ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order.
>
> (iii) If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

8 U.S.C. § 1231(a)(1)(B).

Section (i) applies here, as Petitioner's removal became administratively final on October 27, 2005, the date the Immigration Judge entered the order or removal and Petitioner waived her right to appeal that order. Although the order of removal was judicially reviewed by the Second Circuit, § 1231(a)(1)(B)(ii) does not apply, and the removal period was not delayed until the Second Circuit dismissed the petition for review on December 6, 2006, because no court ordered a stay of Petitioner's removal. Thus, under § 1231(a)(1)(B)(i), Petitioner's 90-day removal period began on October 27, 2005, and her removal is governed by § 1231(a) and Zadvydas. Although Petitioner was detained longer than the six-month period deemed presumptively reasonably in Zadvydas, "[t]his 6-month presumption, of course, does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." Id. at 701.

10

In this case, Petitioner merely asserts that "[i]t is extremely unlikely that the Respondents will remove the Petitioner [and] the continued detention of someone like the Petitioner under such circumstances is unreasonable, and is not authorized by statute." (Pet. at p. 27.) Zadvydas requires the alien to "provide[] good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future [before] the Government must respond with evidence sufficient to rebut that showing." Zadvydas, 533 U.S. at 701. Nothing alleged in the Petition supports an inference that there is no likelihood that Petitioner will not be removed to Greece in the reasonably foreseeable future, now that the Second Circuit rejected Petitioner's challenge to her removal. As Petitioner has not made the required showing under Zadvydas, this Court will dismiss the Petition. However, the dismissal is without prejudice to the filing of another petition in the event that there is good reason to believe that there is no significant likelihood of Petitioner's removal to Greece in the reasonably foreseeable future.

### III. CONCLUSION

For the reasons set forth above, the Court will dismiss the Petition without prejudice.

                                               S/ Dennis M. Cavanaugh
                                               **DENNIS M. CAVANAUGH, U.S.D.J.**

DATED: ___Jan. 10_____, 2007

11